UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CHRISTOPHER ALLEN KINGSLAND,

                Petitioner,             Case No. 2:20-cv-71

v.                                          Honorable Paul L. Maloney

SARA SCHROEDER,

                Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

**I.     Factual allegations**

Petitioner Christopher Allen Kingsland is incarcerated with the Michigan Department of Corrections at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Following a jury trial in the Grand Traverse County Circuit Court, Petitioner was convicted of first-degree criminal sexual assault on April 7, 2017. The court sentenced Petitioner as a fourth offense habitual offender to 30 to 40 years' imprisonment.

Petitioner appealed the judgment of conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied his application on May 28, 2019. Petitioner did not petition for certiorari to the United States Supreme Court. The one-year limitations period, however, did not begin to run until the ninety-day period in which Petitioner could have sought review in the United States Supreme Court had expired. *See Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The ninety-day period expired on August 26, 2019. Petitioner filed his habeas corpus petition on June 1, 2020, within the one-year statute of limitations.

In summarizing the facts underlying Petitioner's conviction, the Michigan Court of Appeals stated:

> This case arises out a January 17, 2016 incident involving defendant, the manager of Fantasy's (a strip club), and an exotic dancer at the club. Defendant, who directly supervised the victim, raped her that evening. The victim testified that while she was preparing to leave for the night, she observed an argument between defendant and another dancer. Defendant had been drinking. At one point, defendant threatened the dancer, and the victim intervened in an attempt to break up the altercation. The victim and defendant struggled, but the two eventually laughed off the encounter. Defendant offered to smoke with the victim and to sort out the situation. The two went into the men's bathroom. The victim claimed that at that point defendant pulled out his penis and a struggle ensued as defendant attempted to remove the victim's sweatpants. The victim ended up face-first on her stomach on the bathroom floor. Defendant, over her physical and verbal protests,

> then engaged in sexual intercourse with her. The victim was eventually able to break contact with defendant, and defendant allowed her to leave.
>
> At a pretrial hearing, the prosecution sought to admit other-acts testimony under MRE 404(b)(1). The prosecution sought to call another dancer from Fantasy's to testify regarding a similar sexual encounter with defendant. The prosecution argued that this testimony was admissible as proof of a common scheme, plan, or system; intent, and absence of mistake. Defendant's trial counsel opposed this testimony as a veiled attempt to make a prohibited propensity argument. The trial court permitted the testimony.
>
> At trial, defendant called several witnesses in his defense, including two dancers at Fantasy's and the current assistant manager. These witnesses testified, in part, that they did not observe defendant engage in any violent or inappropriate sexual conduct towards themselves or the other dancers. On cross-examination, the prosecution asked each of these witnesses whether they were aware of various allegations against defendant by other dancers and employees at Fantasy's. These allegations included allegations of violence and sexual conduct toward the dancers.

*People v. Kingsland*, Nos. 339064; 340176, slip op. 1-2 (Mich. Ct. App. Jan. 22, 2019), http://publicdocs.courts.mi.gov/opinions/final/coa/20190122_c339064_49_339064.opn.pdf.

In his application for habeas corpus relief, Petitioner asserts that his due process rights were violated by the trial court's improper admission of other acts evidence, as well as by the improper use of character evidence by the prosecution. Petitioner contends that this conduct violated Michigan Rules of Evidence and that his counsel was ineffective in failing to object. (ECF No. 1, PageID.7.) Petitioner raised this claim in his direct appeal to the Michigan Court of Appeals and to the Michigan Supreme Court. (*Id.* at PageID.2-6.)

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any

3

claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being

4

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**III. Discussion**

As noted above, Petitioner asserts that other acts evidence was improperly admitted, that the prosecution improperly offered character evidence in violation of the Michigan Rules of Evidence, and that his counsel was ineffective for failing to object. The Court notes that the extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the

5

Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

### A. Other acts evidence

The Michigan Court of Appeals addressed each of Petitioner's evidentiary claims on direct appeal. *Kingsland*, slip op. 2-8. In addressing Petitioner's claim regarding the other acts evidence, the Michigan Court of Appeals stated:

> Defendant first argues that the trial court erroneously admitted other-acts evidence. We review a trial court's decision to admit evidence for an abuse of discretion. *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). A court abuses its discretion when its decision is "outside the range of principled outcomes." *Id*. However, a nonconstitutional, preserved error is "presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative." *Id*. (quotation marks and citation omitted).
>
> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). However, such evidence may

6

>be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1).]

Our Supreme Court explained the four-prong standard for determining the admission of other- acts evidence:

>"First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury." [*People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017), quoting *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993).]

The first prong requires the prosecution to articulate a "proper noncharacter purpose for admission of the other-acts evidence." *Denson*, 500 Mich at 398. When the prosecution's "only theory of relevance is that the other act demonstrates the defendant's inclination for wrongdoing in general and thus indicates that the defendant committed the conduct in question," the evidence fails prong one. *Id*. "[I]n order to determine whether an articulated purpose is, in fact, merely a front for the improper admission of other-acts evidence, the trial court must closely scrutinize the logical relevance of the evidence under the second prong of the *VanderVliet* test." *Id*. at 400.

Other-acts evidence may be admitted to show a common scheme, plan, or system when "the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Knox*, 469 Mich 502, 510; 674 NW2d 366 (2004) (quotation marks and citation omitted). This "is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception of plot . . . ." *Id*. (quotation marks and citation omitted). Further, "a high degree of similarity is not required, nor are distinctive or unusual features required to be present in both the charged and the uncharged acts." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). But a common "similarity between the charged and uncharged acts does not . . . by itself, establish a plan, scheme, or system used to commit the acts." *Knox*, 469 Mich at 510 (quotation marks and citation omitted).

In this case, the similarities and commonalities between the accounts of the other-acts witness and the victim showcased this scheme, plan, or system of defendant utilizing his authority as a manager to coerce, threaten, or intimidate his subordinate dancers into engaging in sexual activity with him. Both instances

7

> involved alleged unconsented sex with defendant. In both cases, the club was either closed or it was near closing time, and the alleged assaults occurred in private areas of the club with few witnesses. Both instances involved a dancer over whom defendant had direct supervision. Additionally, in both cases, the dancers were afraid of losing their jobs if they reported or refused the conduct. Therefore, these two instances were "sufficiently similar to support an inference that they [were] manifestations of a common plan, scheme, or system," *Knox*, 469 Mich at 510, where the common plan, scheme, or system was for defendant to coerce his employee dancers into having sex with him.
>
> The second prong addresses "logical relevance," and other-acts evidence is logically relevant if it is both material and probative. *Denson*, 500 Mich at 401. To be material, evidence must be related to "any fact that is of consequence to the determination of the action." MRE 401; see also *Denson*, 500 Mich at 401. To be probative, it must tend "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *Denson*, 500 Mich at 401-402. In this case, defendant does not address or dispute that the other-acts testimony was both material to and probative of defendant's criminal sexual conduct toward the victim.
>
> The third prong requires "that the probative value of the evidence is not substantially outweighed by unfair prejudice." *Denson*, 500 Mich at 398 (quotation marks and citation omitted). Evidence is unfairly prejudicial when there is a danger that the jury will give marginally probative evidence undue weight. *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2002). However, a limiting instruction (the fourth prong) is sufficient to "counterbalance any potential for prejudice spawned by the other acts evidence." *People v Martzke*, 251 Mich App 282, 295; 651 NW2d 490 (2002). In this case, the trial court gave a limiting instruction after the other-acts witness testified and in the final jury instructions, and "[j]urors are presumed to follow their instructions." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).
>
> Accordingly, all four prongs were met, and the trial court did not err in admitting the other-acts testimony over defendant's objections.

*Id.* at slip op. 2-4.

This Court is bound by the Michigan Court of Appeals' application of state law. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation

8

of state law, including its determination of the elements . . . ."); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018); *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013).

In addition, there exists no Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other-bad-acts evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.

Because there exists no Supreme Court authority supporting Petitioner's position, he cannot show that the state appellate court's rejection of his position is contrary to, or an unreasonable application of, clearly established federal law as required by 28 U.S.C. § 2254 (d)(1).

### B.  Character evidence

Plaintiff also contends that the prosecution's character evidence was improper and violated the Michigan Rules of Evidence. Petitioner complains that in cross-examining his character witnesses, the prosecution offered hearsay allegations of other alleged bad acts in order to ask the witnesses if they were aware of such conduct. The Michigan Court of Appeals stated:

9

Defendant next argues that the prosecution improperly offered character evidence through its cross-examination. Trial counsel failed to object to the prosecution's cross-examination. Therefore, the issue is unpreserved, and our review is for plain error affecting defendant's substantial rights. *People v Knapp*, 244 Mich App 361, 375; 624 NW2d 227 (2001).

Generally, evidence of a person's character or character trait is inadmissible to show that they acted "in conformity therewith on a particular occasion." MRE 404(a). However, "[u]nder MRE 404(a)(1) a defendant may offer evidence that he or she has a character trait that makes it less likely that he or she committed the charged offense." *People v Roper*, 286 Mich App 77, 93; 777 NW2d 483 (2009). "But once a defendant chooses to present evidence of his or her character, the prosecutor may also present evidence concerning that same character trait to rebut the defendant's evidence." *Id.*

However, even if admissible, there are restrictions on how both a defendant and the prosecution may offer this type of evidence. MRE 405(a) states:

> In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct.

Consequently, a "party may only call witnesses to offer testimony concerning their personal opinion of that person's character or to testify about that person's reputation." *Roper*, 286 Mich App at 97. "Moreover, although MRE 405(a) permits 'inquiry' into *specific instances of conduct*, it limits such inquiries to *cross-examination*." *Id.* (emphasis added). "A witness questioned concerning the defendant's character for [a particular aspect] may well slip into a general discourse on the defendant's character . . . thus opening up the range of rebuttal allowed to the prosecution under MRE 404(a)(1)." *People v Whitfield*, 425 Mich 116, 131; 388 NW2d 206 (1986). Consequently, "[a] character witness for the defense may . . . unwittingly furnish the foundation for the prosecutor to acquaint the jury with matters which otherwise could not be admitted into evidence." *Id*.

In this case, the prosecutor cross-examined three witnesses about allegations that other dancers and employees of Fantasy's had made about defendant. These allegations involved specific instances of conduct regarding defendant's character and character traits. This type of questioning was proper under MRE 404(a)(1) because these witnesses first offered testimony regarding defendant's character—namely that he was a nonviolent and appropriate person who did not touch the dancers sexually or inappropriately.

On direct examination, two dancers both testified that they had not seen defendant be violent, either with them or with other dancers. One specifically testified that she did not feel threatened by defendant. They also testified that while defendant may have playfully touched the dancers, it was never in an inappropriate

10

or sexual way. This testimony was character evidence of defendant's pertinent traits. When these two dancers testified as to whether they ever saw defendant be violent or act inappropriately towards the other dancers, this was meant to show the jury that defendant was not a violent or inappropriate person in his interactions with the dancers. It was meant to show that because defendant had not engaged in such conduct in the past, he was less likely to have engaged in the charged offense. Other than to "boost" his own character, defendant's actions toward other dancers had no bearing on whether he sexually assaulted the victim.

This case is similar to that of *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999), where our Supreme Court held that the defendant's testimony about his "role as a father and provider" and the "examples of the types of activities he engaged in with his children" was proffered character evidence. *Id*. at 498. The Court held that the defendant "essentially claimed that he only engaged in appropriate activities with his children" and that such evidence was "clearly 'evidence of a pertinent trait of character' in the context of a trial on charges that defendant raped his daughter." *Id*. In a similar way, the witnesses in this case gave examples of defendant's interactions in his role as a manager, and they claimed that defendant was only engaged in appropriate activities with the dancers. While perhaps not his intent, defendant "unwittingly furnish[ed] the foundation for the prosecutor to acquaint the jury with matters which otherwise could not be admitted into evidence." See *Whitfield*, 425 Mich at 131.

In sum, the prosecution's cross-examination questions were intended to rebut defendant's presentation of character evidence under MRE 404(a)(1). The prosecution used specific instances of conduct to do so, and this was permitted under MRE 405(a).

*Kingsland*, slip op. 4-5.

In a footnote, the Michigan Court of Appeals noted that some of the prosecutor's questions arguably pertained to conduct that fell outside the scope of MRE 405(a) in that the prosecutor asked about specific instances of conduct that did not necessarily pertain to the character trait the witness initially testified to. However, the Michigan Court of Appeals concluded that Petitioner had failed to show how any error affected the outcome of the trial. The Michigan Court of Appeals noted that the prosecutor's questions were not evidence, and the jury had been specifically instructed to only consider the evidence presented and was told that a lawyer's questions to the witnesses were not evidence. In addition, the Michigan Court of Appeals noted that when Petitioner's character witnesses were asked about specific instances of misconduct on

11

defendant's part, they testified that they were unaware of the allegations. The Michigan Court of Appeals concluded that the witnesses did not provide any evidence of these other instances of misconduct and did not affect Petitioner's rights. *Id.*, slip op. 5, fn 1.

The Michigan Court of Appeals specifically addressed Petitioner's claim that the prosecutor's cross-examination violated Rule 403 of the Michigan Rules of Evidence by noting that the evidence was highly relevant because Petitioner's conduct and character as a manager at the strip club were crucial to the prosecutor's case:

> The prosecution attempted to demonstrate that defendant used his managerial position and power to physically force the victim to engage in sexual activity with him. Through its other-acts evidence, the prosecution also attempted to show that defendant had a common scheme, plan, or system by which he used his authority to coerce, intimidate, and even physically force other dancers to engage in sexual activity with him. The prosecution argued that this same scheme was then used on the victim. To counter this, defendant called several witnesses to testify to his appropriate character and nonviolent nature. The prosecutor's questions were aimed at directly rebutting this testimony. None of the allegations mentioned by the prosecutor were so inflammatory or outrageous as to unfairly prejudice the jury against defendant. These did not relay unrelated and outlandish allegations from individuals entirely disconnected with the case. Each allegation came from either a dancer or an employee of Fantasy's. These allegations came from individuals in the same working environment as the victim. In fact, the majority of the allegations came from other dancers.

*Id.*, slip op. 6. The Michigan Court of Appeals also noted that the trial court prohibited questions related to Petitioner's prior bank robbery and kidnapping convictions. *Id.*, slip op. 6, fn. 2.

As noted above, the question of whether evidence was properly admitted under state law is not cognizable in a federal habeas corpus action. *Estelle*, 502 U.S. at 67-68. The Sixth Circuit has held that the kind of foundational unfairness and arbitrariness needed to show that a flawed state court evidentiary ruling rises to the level of a due process violation is not a broad category, and the Supreme Court has never identified an improper-character-evidence case that falls into it. *Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013). In addition, the Sixth Circuit has observed that the Supreme Court has never recognized that the constitution is violated

12

by the admission of unreliable hearsay evidence. *Desai v. Booker*, 732 F.3d 628, 630-31 (6th Cir. 2013). Petitioner cannot show that the state appellate court's rejection of his claim regarding the prosecutor's cross-examination of Petitioner's character witnesses is contrary to, or an unreasonable application of, clearly established federal law as required by 28 U.S.C. § 2254 (d)(1).

### C. Ineffective assistance of counsel

Finally, Petitioner claims that his counsel was ineffective in failing to object to the prosecutor's cross-examination of Petitioner's character witnesses. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of

*Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner raised this issue before the Michigan Court of Appeals. In determining that Petitioner's counsel was not ineffective, the Michigan Court of Appeals stated:

> Importantly, a defendant's inability to succeed on a plain error claim does not automatically preclude him from succeeding on an ineffective assistance claim that relates to the same error. *People v Randolph*, 502 Mich 1, 5; 917 NW2d 249 (2018). This Court "must independently analyze each claim, even if" a defendant's ineffective assistance claim "relates to the same error" as the plain error claim. *Id.*
>
> In this case, as previously discussed, the prosecutor did not erroneously venture into rebuttal character evidence in its cross-examinations. His questions were permissible under MRE 404(a)(1) because defendant "opened the door" by offering evidence of his own pertinent character traits. As already discussed, there was also no MRE 403 violation. Thus, for the vast majority of the prosecutor's questions, defendant's trial counsel had no obligation to object, and failing to do so did not fall below an objective standard of reasonableness. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").
>
> However, there were a few questions that arguably were improper, or more precisely would have solicited improper evidence, under MRE 404(a)(1). Yet, even assuming that trial counsel's actions fell below an objective standard of reasonableness for failing to object to these questions, defendant has failed his "heavy burden" because he has not offered a substantive analysis showing that these few questions deprived him of a fair trial or that there was a reasonable probability that but for these questions the outcome of the trial would have been different. As already noted, no damaging evidence was admitted as a result of these questions—the witnesses did not have any knowledge of these other specific incidents the prosecutor had inquired about. As a result, the inclusion of these few

14

>questions, with no supporting answers, can hardly be said to have prejudiced defendant on these topics. In other words, the outcome of the trial would have been no different had the questions not been asked. Therefore, defendant cannot prevail on his claim of ineffective assistance of counsel.

*Kingsland*, slip op. 7-8.

As noted by the Michigan Court of Appeals, the majority of the prosecutor's questions were permissible under state law, so that the failure to object under state law was not outside the range of professional competent assistance. *Strickland*, 466 U.S. at 690. In addition, the few questions that could have solicited improper evidence, failed to do so because the witnesses did not have knowledge of the incidents inquired about by the prosecutor. Petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Court previously stated, the Supreme Court has never recognized that the constitution is violated by the admission of unreliable hearsay evidence. *Desai v. Booker*, 732 F.3d 628, 630-31 (6th Cir. 2013). Thus, the allegedly improper questions did not violate due process. As a consequence, Petitioner cannot show that counsel's failure to object under federal law was professionally unreasonable. *See Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

Because Petitioner cannot show that the state appellate court's rejection of his ineffective assistance of counsel claim is contrary to, or an unreasonable application of, clearly established federal law as required by 28 U.S.C. § 2254 (d)(1), this claim is properly dismissed.

15

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   June 29, 2020                                /s/ Paul L. Maloney
                                                                    Paul L. Maloney
                                                                    United States District Judge